FILED

2008 Sep-24  PM 03:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

ROBIN BOOTH, MELINDA          )
BOOTH,                        )
        Plaintiffs,           )
vs.                           )          Case No.      7:08-cv-253-TMP
                              )
GREEN TREE-AL, LLC; etc., et al.,   )
                              )
        Defendants.           )

ORDER and MEMORANDUM OPINION
REGARDING JURISDICTION AND ARBITRATION

      Several motions are pending before the court.  The first is a motion to compel arbitration and to stay proceedings filed by American Bankers Insurance Company of Florida and American Bankers Life Assurance Company (collectively "American Bankers").[1]  (Doc. 2)  A motion to compel arbitration and to stay proceedings also was filed by defendants Green Tree Servicing, LLC, Green Tree-AL, LLC, and Green Tree Insurance Agency, Inc. (collectively "Green Tree").[2]  (Doc. 4)  The

---

    [1]    American Bankers point out that the plaintiffs have sued both insurance companies, even though it appears that the policy that gives rise to this dispute was issued by American Bankers Insurance Company of Florida, and there is no evidence at this time before the court that indicates that American Bankers Life Assurance Company issued any policy to plaintiffs.  For purposes of the instant motions, however, the court treats the two defendants as one, assuming without deciding that both could properly be named as defendants in tort or contract actions brought by one or both plaintiffs.  (Doc. 12, n. 1).

    [2]    The Green Tree defendants maintain that they are "affiliates" involved in the servicing of loans and the insurance-related matters pertaining to those loans.  (Doc. 4, n. 1).

court set these motions for oral argument, and at the hearing plaintiffs sought time to conduct discovery on the issue of this court's subject-matter jurisdiction.[3]  Green Tree has since filed a supplemental motion to compel arbitration. (Doc. 20)   The final motions before the court are the plaintiffs' motion for reconsideration on the issue of subject-matter jurisdiction, and a supplemental motion seeking the same relief.  (Docs. 14 and 20)  The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B).

<u>Background</u>

This case arises from a fire in which the mobile home in which plaintiffs Robin and Melinda Booth resided was destroyed.[4]  The mobile home was financed by Green Tree.  Because plaintiffs failed to procure property insurance for the mobile home as required by the financing agreement, Green Tree force-placed property insurance in accordance with the contract for financing by purchasing a policy with American Bankers.  It is clear from the evidence that Green Tree did so at

---

[3]     The discovery came as a result of a motion titled a motion for transfer of venue, which the court construed as a motion to remand, and which the court denied.  Plaintiffs then filed a motion to vacate the order denying remand, and sought further discovery on the issue of whether defendant Green Tree-AL, LLC, is an Alabama citizen.

[4]     The sales contract for purchase of the mobile home names only Robin Booth as the buyer.  Similarly, only Robin Booth is named as an insured on the insurance policy issued by American Bankers.  The complaint recites, however, that both plaintiffs assert claims for fraud as well as breach of contract and bad faith, although it is unclear how Melinda Booth has any claim or standing as it does not appear that she is either the owner or the insured with respect to the mobile home.

least as early as October of 2006.[5]  On October 29, 2007, Green Tree once again force-placed property insurance on the mobile home, purchasing the new policy from American Bankers.  The policy issued by American Bankers contained a new arbitration endorsement (different from that in the 2006 policy), identified as Form AJ8654EXX, which read:

> Read The Following Arbitration Provision ("Provision") Carefully.  It Limits Certain Of Your Rights, Including Your Right To A Jury trial And To Obtain Redress Through Courts.
>
> As used in this Arbitration Provision, "You" and "Your" mean the policy holder or policy holders, insureds, or additional insureds, and all of his/her heirs, survivors, assigns and representatives.  "We" and "Us" mean American Bankers Insurance Company of Florida.
>
> Any and all claims, disputes, or controversies of any nature whatsoever (whether in contract, tort or otherwise, including statutory, common law, fraud (whether by misrepresentation or by omission) or other intentional tort, property, or equitable claims) arising out of, relating to, or in connection with (1) this Policy or Certificate or any prior Policy or Certificate issued by Us to You, (2) Any credit, loan or purchase transaction in connection with which this Policy or Certificate or any prior Policy or Certificate was issued by Us to You, or (3) the validity, scope, interpretation, or enforceability of this Provision or of the entire Policy or Certificate ("Claim"), shall be resolved by binding arbitration before a single arbitrator.  All arbitrations shall be administered by the American Arbitration Association ("AAA") in accordance with its Expedited Procedures of the Commercial Arbitration Rules of the AAA in effect at the time the Claim is filed.  The terms of this Provision shall control any inconsistency between the AAA's Rules and this Provision.  You may obtain a copy of the AAA's Rules by calling (800)778-7879.  The cost of all arbitration proceeding shall by paid by US, with the exception of the cost of representation of You.  However, the arbitrator shall have the authority to order You to pay all costs of the arbitration proceedings if the arbitrator determines that the dispute is without substantial justification.  The arbitrator shall apply relevant substantive federal and state law and applicable statutes of limitations and shall

---

[5]     It should be noted that the policy in effect from October 29, 2006, to October 29, 2007, although not the policy at issue in this case, also contained an arbitration provision.

provide written, reasoned findings of fact and conclusions of law. This Arbitration Provision is part of a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. Arbitration proceedings shall commence within ninety (90) days after the first notification of one party by the other party by the other as to their election to arbitrate a dispute. Arbitration proceedings shall be conducted in the county where You reside, unless another location is mutually agreed upon in writing by You and US. If any portion of this Arbitration Provision is deemed invalid or unenforceable, it shall not invalidate the remaining portions of the Arbitration Provision. For the purpose of this Arbitration Provision, American Bankers Insurance Company of Florida shall be deemed to include all of its affiliates, successors and assigns, including but not limited to __American Bankers Insurance Company of Florida, their respective principals, partners, officers and directors and all of the dealers, licensees, agents, and employees of any of the foregoing entities. This Arbitration Provision shall inure to the benefit of and be binding on You and each of the aforementioned persons and entities. This Provision shall continue in full force and effect subsequent to and notwithstanding the expiration of termination of this Policy or Certificate.

No Class Actions/No Joinder of Parties: You agree that any arbitration proceeding will only consider Your Claims. Claims by, or on behalf of, other individuals will not be arbitrated in any proceeding that is considering Your Claims. You also agree that You will not join with others to bring Claims in the same arbitration proceedings unless all such persons are named on Your Policy or Certificate.

YOU AND WE UNDERSTAND AND AGREE THAT BECAUSE OF THIS ARBITRATION PROVISION NEITHER YOU NOR WE WILL HAVE THE RIGHT TO GO TO COURT EXCEPT AS PROVIDED ABOVE OR TO HAVE A JURY TRIAL OR TO PARTICIPATE AS ANY MEMBER OF A CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM.

(Doc. 2, Ex. 1). The certificate page of the policy explicitly capped the limitation of the policy at "$54,506 LESS DED" and it named Green Tree as the lienholder on the mobile home. Because the policy was issued on October 29, 2007, plaintiffs did not receive a copy of it until after the fire on November 5, 2007.

After the fire, American Bankers began an investigation of the plaintiffs' claim on November 5, 2007, under a "reservation of rights" letter, expressly because it could not be confirmed at that moment that insurance existed on the mobile home. There is no dispute now that this insurance existed. Ultimately, American Bankers paid the sum of $54,506, the policy limit, pursuant to the insurance policy.

Plaintiffs' complaint asserts that the defendants should have insured the property for an amount in excess of $245,000, which they allege is the total amount needed for loss of personal property, replacement of the mobile home, debris removal, and temporary living expenses. Plaintiffs allege breach of contract, various claims of fraud and misrepresentation, and bad faith on the part of all defendants. The complaint was originally filed in the Circuit Court for Tuscaloosa County, Alabama, but was removed by the defendants on February 11, 2008, and a motion to compel arbitration was filed on that same date by the American Bankers defendants. On February 15, 2008, the Green Tree defendants filed a similar motion to compel arbitration.

Subject-Matter Jurisdiction

The plaintiffs have asserted a challenge to this court's subject-matter jurisdiction, insisting that Green Tree-AL, LLC, is an Alabama citizen for purposes of diversity jurisdiction. The court has allowed discovery on this narrow issue, and all parties have had the opportunity to file supplemental information relating to the citizenship of this Green Tree defendant. In an order dated May 9, 2008, the court found that the citizenship of Green Tree-AL, LLC, is diverse to the plaintiffs,

and that it is a foreign corporation, being incorporated in Delaware and having its principal place of business in St. Paul, Minnesota.  Plaintiffs filed a motion to reconsider the court's May 9, 2008, order (Doc. 14), and have further filed a supplemental motion to reconsider (Doc. 21).  Green Tree has filed a reply and an evidentiary submission in support of its contention that the court has diversity jurisdiction.

The subject-matter jurisdiction of this court must be examined as a threshold matter before the court can determine whether the motions to compel arbitration are well taken.  In order to establish the complete diversity required by 28 U.S.C. § 1332, the removing party must demonstrate that no defendant in the action is a citizen of the same state as any plaintiff.[6]  A corporate defendant's citizenship for diversity purposes is dual: the corporation is a citizen of both the state in which it is incorporated and the state in which it has its principal place of business.  TSG Water Resources, Inc. v. D'Alba & Donovan, Certified Public Accountants, P.C., 260 Fed. Appx. 191, 195 (11th Cir. 2007). Green Tree asserts that Green Tree-AL, LLC, is incorporated in Delaware and that its principal place of business is in Minnesota.  Although plaintiffs concede that Green Tree-AL, LLC, is incorporated in Delaware, they argue that it actually has its principal place of business in Alabama.

The Eleventh Circuit has adopted a "total activities" test for determining a company's principal place of business for purposes of diversity jurisdiction.  Vareka Investments, N.V., v. American Investment Properties, Inc., 724 F.2d 907, 909-10 (11th Cir. 1984).  The "total activities" test is a combination of the "place of activities" and "nerve center" tests used in other circuits.

---

[6]      No party questions that the amount in controversy exceeds the jurisdictional minimum of $75,000.

Vareka, 724 F.3d at 910.  Applying the "nerve center" test used in other circuits, the location of the company's corporate offices is generally determined to be the principal place of business, while the "place of activities" test focuses more upon an examination of where the company conducts its sales or production activities.  724 F.3d at 910.  See also, Toms v. Country Quality Meats, Inc., 610 F.2d 313, 315 (5th Cir. 1980).  When the results of these two tests are different, the district court conducts a "somewhat subjective analysis" to determine which location should be considered the corporation's principal place of business.  610 F.2d at 315.

In TSC Water Resources, the Eleventh Circuit made clear that, where a company's activities "are not concentrated in one place," a district court may place greater emphasis on the "nerve center" test when determining principal place of business.  460 Fed. Appx. at 195; see also, MacGinnitie v. Hobbs Group, LLC, 520 F. 3d 1234, 1239 (11th Cir. 2004), quoting Sweet Pea Marine, Ltd. v. APJ Marine, Inc., 411 F. 3d 1242, 1247 (11th Cir. 2005).  In sum, the Eleventh Circuit requires that the district court determine a corporation's principal place of business by looking to a broader definition of the company's operations, which involves an examination of the location of the corporation's "nerve center" – generally at corporate headquarters – and the location of a majority of its sales or production activities, which may occur in a separate place.  See, e.g., Crockett v. Securitos Sec. Services USA, Inc., 2007 WL 4462918 *2 (11th Cir. Dec. 21, 2007).

In the instant case, the parties do not seriously dispute that the "nerve center" of Green Tree-AL, LLC, is located in St. Paul, Minnesota.  Green Tree has provided evidence to show that corporate documents designate St. Paul as the principal place of business.  Furthermore, it is clear that the Alabama Secretary of State's office considers Green Tree-AL, LLC's principal place of

7

business to be St. Paul.  All of the officers of the corporation are located in St. Paul, and all meetings of the officers occur in St. Paul.  Key management decisions are made in St. Paul, where documents and contracts, including the servicing agreement that gives Green Tree-AL, LLC, the power to conduct the sorts of activities at issue in this lawsuit, were executed and are maintained.  Other corporate books and records are located in St. Paul, where the company's counsel and accountants can be found.  Its tax and bank accounts are located in St. Paul.  Plaintiffs do not dispute that virtually all of the corporate activities take place in St. Paul, except for certain  functions relating to loan servicing, some of which occur from the field office in Birmingham, Alabama.  Green Tree-AL, LLC, has no employees in Birmingham, and the functions actually performed there are carried out by another Green Tree entity under a master servicing agreement with Green Tree-AL, LLC. Although Robert D. Eller, the manager of the Birmingham field office, is located in Birmingham, he actually is an employee of a separate Green Tree entity.

Plaintiffs' contention that Green Tree AL, LLC's principal place of business is in Alabama, therefore, will substantiate a lack of subject-matter jurisdiction only if the evidence demonstrates that a majority of the corporation's activities take place in Alabama.  The plaintiff argues that Green Tree's principal place of business is in Alabama because more than fifty percent of the loan agreements that are serviced through the Birmingham office involve contracts that originated in Alabama.  Defendant has shown, however, that Green Tree-AL, LLC, engages in many types of loan servicing activities through offices in several states, and that the activities of the Alabama office include only those related to the servicing of loans that are at least 25 days overdue.  Green Tree has shown that 95 percent of all such loans are current; accordingly, 95 percent of the loans are serviced

8

from some other location. The Alabama office also services loan contracts from several other southeastern states. While plaintiff has demonstrated that more than fifty percent of the activities of the Birmingham office involve Alabama contracts, the evidence offered by defendants, who bear the burden of proof as the removing parties, supports a finding that the business conducted in Alabama represents only a small part of Green Tree-AL, LLC's total business. The deposition of the defendant's representatives indicates that Green Tree-AL services not only the mobile home sales contracts like the one at issue in this case, but also home equity loans, home improvement loans, and consumer credit loans in states other than Alabama, and that it does so in locations outside of Alabama.

Considering all of the evidence, the court must conclude that only delinquent mobile home loans are serviced through the Birmingham office and that these loans constitute only five percent of the loans serviced through Green Tree-AL. The Alabama office does not service any of the 95 percent of mobile home loans that are current, or any of the mobile home loans that are in bankruptcy. Consequently, the facts point to the inevitable conclusion that a substantial portion of Green Tree-AL's business takes place somewhere other than Alabama, and that its principal place of business for diversity purposes is in St. Paul, Minnesota. As the removing defendants, Green Tree has successfully established the requisites to support their contention that this court has subject-matter jurisdiction on the basis of diversity of the parties. The motions to reconsider the order denying remand (Docs. 14 and 21) are due to be denied.

Arbitration

The defendants in this matter have filed motions to compel arbitration of all of plaintiffs' claims. The motions arise from an arbitration provision contained in the insurance policy that covered the mobile home, issued October 29, 2007, just seven days before the fire that destroyed the mobile home on November 5, 2007. The arbitration provision at issue in this case is found in an endorsement form added to the insurance contract, but replacing a similar arbitration provision that existed in the insurance contract issued to the plaintiffs in 2006.

The plaintiffs do not assert that the arbitration provision is insufficient in scope to encompass the claims alleged in the complaint. Nor do plaintiffs contend that no defendant is entitled to rely upon this specific arbitration provision. Plaintiffs' arguments in opposition to enforcement of the arbitration clause are twofold: (1) that they did not manifest any assent to the provision, and (2) that the defendants have waived their right to enforce the provision by engaging substantially in litigation. The court addresses plaintiffs' contentions in turn.

A.  Assent to the Arbitration Provision

Plaintiffs seek to avoid enforcement of the arbitration provision on the basis that they did not see, did not sign, and never agreed to the provision on which defendants rely. As discussed *supra*, the insurance at issue was procured through Green Tree as a result of its retail installment sales contract with plaintiff Robin Booth. That contract required plaintiff to obtain property insurance on the mobile home, and further provided that Green Tree could obtain insurance to cover its interest in the property and to charge plaintiffs the premium for such insurance. This relatively common

10

procedure, known as "force-placed" insurance, is a frequent feature of loans securing real property or manufactured homes.

The plaintiffs in this case do not dispute that Green Tree had the right to "force-place" insurance, or that Green Tree in fact did "force-place" insurance by procuring the policy at issue through American Bankers. They do not dispute that they were aware that Green Tree was doing so, because Green Tree had also "force-placed" insurance the previous year, from October 2006 to October 2007. Plaintiffs concede that they knew that force-placed insurance was in effect to cover their home and, in fact, that they had relied on this "pattern and practice of dealing with the Plaintiffs to procure insurance." (Complaint, ¶ 19) Finally, plaintiffs concede that they made a claim under the insurance policy and received the benefit of payment to the full policy limits of $54,506. Plaintiffs do not even allege that this amount was insufficient to cover their debt to Green Tree, but assert that they were fraudulently misled into believing that Green Tree would procure insurance in an amount sufficient to cover the complete replacement cost of the damaged mobile home, all of the personal property contained in the mobile home, debris removal, and temporary housing. (Complaint, ¶¶ 13-15.)

The plaintiffs oppose the motions to compel arbitration on the basis that they never agreed to arbitrate their claims. They support this argument with their contention that they never received a copy of the insurance policy and the arbitration endorsement until after the fire, and that they never "signed" the policy or the arbitration agreement contained therein.

The issue before the court is whether the plaintiffs' tort and contract claims are subject to the arbitration agreement contained in the American Bankers policy. It is up to the court, not the

11

arbitrator, to decide whether an arbitration provision is enforceable. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04, 87 S. Ct. 1801, 1806, 18 L. Ed. 2d 1270 (1967).  A dispute "should not be sent to arbitration unless there is a valid agreement to arbitrate and the underlying dispute falls within the scope of that agreement." Telectronics Pacing Sys., Inc. v. Guidant Corp., 143 F. 3d 428, 433 (8th Cir. 1998).  In other words, to determine whether to enforce an arbitration agreement, the court must decide (1) whether a valid arbitration agreement exists between the parties and, if so, (2) whether the dispute before the court is encompassed by the terms of the arbitration provision. See Cedrela Trans., Ltd. v. Banque Cantonale Vaudoise, 1999 WL 782494 *1 (S.D.N.Y. Sept. 30, 1999).  Because the scope of the arbitration agreement in this case is not in dispute,[7] the court must evaluate the validity and enforceability of the provision.

(1) Enforcement Against Non-Signatories

Plaintiffs first argue that the arbitration provision is not enforceable because it is not signed by either plaintiff.  It has been noted that "[f]ederal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of such agreements. Employers Insurance of Wausau v. Bright Metal Specialties, Inc., 251 F. 3d 1316, 1322 (11th Cir. 2001). Furthermore, federal law dictates that "questions of arbitrability, when in doubt, should be resolved

---

[7]     Although plaintiffs do not question the scope of the arbitration agreement to cover both of plaintiffs' claims, the court notes that, even though plaintiff Melinda Booth is not mentioned in either the installment sales contract or the insurance policy, she bases her claims of breach of contract and bad faith on the existence of the insurance contract itself.  For the reasons explained below, she cannot now seek the benefit of the contract while denying the effect of the arbitration provision in it.

in favor of arbitration." 251 F. 3d at 1322, citing <u>Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983).

As a general rule, under Alabama law, a non-signatory cannot be forced to arbitrate his or her claims. <u>See</u> <u>Cook's Pest Control, Inc. v. Boykin</u>, 807 So. 2d 524, 526 (Ala. 2001). There are, however, exceptions to this rule. The Alabama Supreme Court has held that the signature of a party seeking to enforce an agreement is not a requisite to enforcement of the agreement. <u>Quality Truck and Auto Sales v. Yassine</u>, 730 So. 2d 1164, 1169 (Ala. 1999). In <u>Yassine</u>, the court held that "unless a contract is required by statute to be in writing, it need not be signed, provided it is accepted and acted upon." 730 So. 2d at 1169. It has further been held that neither the lack of a written arbitration agreement, nor the lack of the signature, is necessarily an "impediment to arbitration." <u>Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.</u>, 10 F. 3d 753, 756-57 (11th Cir. 1993). This has been held to be true when the claims made presume or reference the existence of the contract itself. <u>Sunkist</u>, 10 F. 3d at 757-58. If a party seeks the benefit of a contract, he must also assume all of the burdens imposed by the contract.

The Eleventh Circuit has addressed a similar situation in <u>Blinco v. Green Tree Servicing, LLC</u>, 400 F. 3d 1308 (11th Cir. 2005). In <u>Blinco</u>, a husband and wife entered into a mortgage in which the document containing the arbitration provision was signed only by the husband. The appellate court reversed the district court's denial of Green Tree's motion to compel arbitration, noting that the wife had asserted claims that "derive[d] from her status as a borrower under the Note." The court noted that a plaintiff may not rely upon the contract "to establish her claims while avoiding her obligation . . . to arbitrate such claims."

13

The Alabama Supreme Court also has upheld arbitration provisions in insurance contracts that an insured did not see or sign.  In Ex parte Southern United Fire Insurance Co., the court stated:

> Although Dewrell contends that he did not, and could not, accept the terms of the Southern United policy because he did not receive a copy of either the policy or the arbitration rules referenced in the policy, it is undisputed that he is seeking to recover damages based on allegations that, among other things, Southern United breached the contract of insurance. Therefore, Dewrell is relying on the Southern United insurance policy to support his claim for damages. Because Alabama law prohibits a person from picking and choosing those provisions in a contract that he wants to apply, if Dewrell wants to recover for a breach of the insurance policy, he has no choice but to pursue his remaining claims under the terms of that contract. See *Delta Constr. Corp. v. Gooden*, 714 So.2d 975, 981 (Ala.1998). Thus, arbitration in this case must comply with the terms outlined in the Southern United policy and the arbitration rules referred to in that policy.

Ex parte Southern United Fire Ins. Co., 843 So. 2d 151, 156 (Ala. 2002).  This case, and others cited by American Bankers, demonstrates that Alabama contract law clearly authorizes the enforcement of an insurance contract where the insured has neither received a copy of the policy nor signed the contract.  See, *e.g.*, Philadelphia Amer. Life Ins. Co. v. Bender, 893 So. 2d 1104, 1108 (Ala. 2004) (holding that a plaintiff relying on the policy to support his claims is bound by an arbitration policy therein even if he did not receive a copy of the policy for two years and never signed it).  Moreover, an insured has generally been held to manifest assent where he fails to exercise his right to cancel the insurance policy, pays premiums for the insurance policy, and submits a claim under the policy. Bender, 893 So. 2d at 1109, citing Southern Foodservice Mgt. v. American Fidelity Assurance Co., 850 So. 2d 316, 320 (Ala. 2002).  See also American Bankers Ins. Co. v. Crawford, 757 So. 2d 1125, 1130 (Ala. 1999).

14

Both the law and the particular facts that give rise to the instant action compel the conclusion that the arbitration provision should be enforced.  In this case, plaintiffs do not dispute that they knew that Green Tree would force-place insurance on the mobile home, and they knew that they were paying the premiums on the force-placed insurance beginning in November 2006.  They do not dispute that they received a copy of the 2006 policy, which contained an arbitration provision, albeit a different one from that at issue here.  The Green Tree sales contract specifically stated that, if the buyer failed to procure the requisite insurance, Green Tree would procure insurance that would be sufficient to protect Green Tree's interest in the collateral.  The plaintiffs were notified in November of 2006 that Green Tree had purchased property insurance "to protect [Green Tree's] interest in the collateral." (Letter dated 11/20/06).  The plaintiffs were notified of their right to procure their own insurance, and were warned that force-placed insurance could be "more expensive" and could provide "less protection" than insurance they purchased on their own.  They were told that the force-placed policy would not provide any liability coverage or any "personal property contents coverage." (Letter dated 10/04/07, Doc. 23-4).   They were notified that they had "the option of purchasing [their] own insurance protecting [their] interests in the collateral, [their] personal property contents and personal liability."  Id.

The first American Bankers policy was issued on October 29, 2006, and remained in force for a year.  It contained an arbitration provision.  Plaintiffs paid the premiums of almost $900 per annum, and did not seek to cancel or replace the policy.  A second policy took effect on October 29, 2007, just days before the fire loss claim was made on November 5, 2007.  Although plaintiffs did not receive a copy of the new policy until after the loss, along with a letter from Green Tree dated

November 8, 2007, there is no dispute that plaintiffs chose to maintain the force-placed American Bankers policy for a year, never sought to purchase different or additional insurance, paid the premiums on the insurance beginning in November 2006 and continuing through the date of loss in November 2007, and received the benefit of the claim paid in the amount of the policy limits.  As mentioned earlier, they specifically allege in their complaint that they "relied" on this pattern and practice of Green Tree force-placing insurance.  Having thus relied on the contract of insurance as the foundation for not only their claim, but also their cause of action in this case, plaintiffs are estopped to deny that they assented to the contract, and all of its provisions.

It appears that what plaintiffs want in this case is the benefit of the policy issued by American Bankers, relief from the debt they would otherwise have to Green Tree, and the further benefit of additional insurance they chose not to procure or pay for.  Considering all of the information available to plaintiffs prior to the fire loss, the court finds that they manifested their assent to the arbitration provision, even if they did not see the 2007 policy and did not sign the provision until after they made their claim.

(2) Enforcement By Non-Signatories

An argument not advanced by the plaintiffs, but one worthy of mention in passing, is the assertion that the Green Tree defendants are not entitled to enforce the arbitration provision in the American Bankers policy because none of the Green Tree defendants were parties to that policy. This argument can be answered briefly simply on the basis that plaintiffs' claims against the Green Tree defendants are essentially intertwined with and indistinguishable from those asserted against

16

American Bankers.  Thus, to the extent that the claims against American Bankers must be arbitrated, the claims against Green Tree also will be involved and resolved.

Second, the express terms of the arbitration provision allows for Green Tree to involve it against the plaintiffs who assented to the provision.  By its terms, the arbitration provision covers "Any and all claims, disputes, or controversies of any nature whatsoever... arising out of, relating to, or in connection with (1) this Policy or Certificate or any prior Policy or Certificate issued by Us to You, (2) *Any credit, loan or purchase transaction in connection with which this Policy* or Certificate or any prior Policy or Certificate was issued by Us to You...."  Thus, the scope of the provision goes beyond merely the insurance questions arising from the policy itself to cover also the credit transactions underlying the issuance of the policy.  As "force-placed" insurance, the policy was issued for the benefit of the lienholder, and by its terms the arbitration agreement covers the credit transaction that prompted the forced placement of insurance.  Consequently, the creditor, the Green Tree defendants, also are entitled to invoke and enforce the arbitration agreement, even though they were not party to the insurance contract.


B.  Waiver

Finally, plaintiffs further argue that the defendants have waived any right to arbitrate these claims in either of two ways: (1) by substantially engaging in litigation inconsistent with the arbitration provision, and (2) by allowing a 90-day deadline in the arbitration provision itself to expire.  Plaintiffs asserted in their response filed February 29, 2008, (Doc. 9) that the waiver occurred because the defendants invoked the litigation process.  Plaintiffs argued for the first time

17

in their response filed July 17, 2008, (Doc. 23) that the defendants' alleged waiver occurred because they failed to initiate arbitration within 90 days after the dispute arose, as required by the language of the arbitration provision. Both waiver arguments, however, are without merit.

The law regarding waiver of a right to arbitrate requires that a party seeking arbitration "substantially participates in litigation to a point inconsistent with an intent to arbitrate." Ivax Corp. v. B. Braun of Amer., Inc., 286 F.3d 1309 (11th Cir. 2002). The invocation of the litigation process must be "substantial" and it must work to the prejudice of the party opposed to arbitration. Here, the defendants promptly sought to compel arbitration upon removal of the complaint to federal court. The removal itself was not a "substantial" invocation of the litigation machinery, and certainly was not inconsistent with the right to seek arbitration. The only discovery engaged in was that sought and initiated by the plaintiffs and ordered by the court on the narrow issue of diversity of citizenship. None of the defendants' actions has evinced an intent to waive the right to arbitrate, nor has it caused any prejudice to the plaintiffs. They have not been forced to incur litigation expense or delay beyond that which they themselves sought.

Plaintiffs' belated argument that the waiver should be based, instead, on the fact that the motion to compel arbitration came more than 90 days after the "dispute arose" also is without any basis in fact or law. A reservation of rights, and a payment of the full policy limits, does not create a "dispute" that would prompt a reasonable party to initiate arbitration. It is the filing of the lawsuit in January 2008 that gave rise to the arbitrable dispute at issue. See Morewitz v. West of England Ship Owners Mut. Protection and Indem. Ass'n, 62 F.3d 1356, 1366 (11th Cir. 1995). The first motion to compel arbitration was filed only a month after the complaint was filed in state court.

In any event, the 90-day provision in the arbitration agreement cannot be read as a deadline for commencing arbitration, as opposed to an assurance that, once arbitration is invoked, a reasonably prompt hearing will occur.   In its entirety, the 90-day clause reads, "Arbitration proceedings shall commence within ninety (90) days *after the first notification of one party by the other party by the other as to their election to arbitrate a dispute*."   (Italics added).   Contrary to plaintiffs' argument, the 90-day period does not commence at the first sign of a dispute, but, rather, when either party first notifies the other of its "election to arbitrate the dispute."   This is not a waiver provision that bars an election to seek arbitration more than 90 days after a dispute arises.   It simply cannot be read that way.

Finally, even if the 90-day provision could be read as establishing a deadline for *seeking* arbitration, whether that provision was met or violated in this case would be a question for the arbitrator to resolve, not the court.   The 90-day provision itself is part of the arbitration agreement, and thus a defense that exists or not due to the arbitration agreement.   The failure to comply with a deadline that operates as a disentitlement to the arbitration forum necessarily is defensive in nature and must be considered by the arbitrator, not the court, as it is nothing more than a question of enforcement of an express provision of the arbitration agreement itself.

Accordingly, the court finds that none of the defendants waived any right to arbitrate the claims asserted here.

Conclusion

Having carefully considered all of the evidence and argument of the parties, the court finds that the motions to vacate, amend, or reconsider the court's order denying remand (Docs. 14 and 21) are due to be and hereby are DENIED.  The motions to compel arbitration (Docs. 2, 4, and 21) are due to be GRANTED, and the claims in this action are, therefore, due to be DISMISSED.  By separate order, the court will dismiss this action based on the plaintiffs' duty to arbitrate their claims.

DATED the 24th  day of September, 2008.

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE

20